IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **ROBERT DUPREY,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: PWG-13-3496 |
| **THE SCOTTS COMPANY LLC,** | * | |
| Defendant. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Robert Duprey filed this action against his former employer ("Scotts") seeking damages for its alleged failure to pay proper overtime wages under the FLSA and two related Maryland statutes. After the employer answered the complaint, but before discovery commenced, the parties jointly moved for court approval of the settlement agreement they have executed. I find the net amount Duprey will receive to be fair and reasonable in light of the facts of this case and therefore approve the settlement. Additionally, I approve the attorneys' fee award under a lodestar calculation even though the award was calculated using a contingent-fee arrangement.

**I. BACKGROUND**

Duprey worked for an affiliate of Scotts as a lawn technician and territorial service representative beginning in February of 2008.[1] Compl. ¶ 8, ECF No. 2. He was paid between $14 and $23 per hour and alleges that he "typically and customarily worked more than forty (40) hours per week." *Id.* ¶ 10. In the Complaint, Duprey claims he was never paid the proper rate of

---

[1] There is some dispute about precisely what entity employed Duprey, but it is undisputed that the entity was related to Scotts. *See* Ans. 1 n.1, ECF No. 13,

overtime for 440.78 overtime hours worked and claims that Scotts owes him $11,927.69 in back pay. *Id.* ¶¶ 12, 14–15.

Consequently, Duprey filed this three-count Complaint, which was removed to this Court from the District Court of Maryland for Montgomery County on November 20, 2013. *See* Notice of Removal, ECF No. 1. The Complaint alleges violations the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201–219, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430, and the Maryland Wage Payment and Collection Law ("MWPCL"), §§ 3-501 to 3-509. Scotts filed a motion to dismiss the MWPCL claim five days after removal, ECF No. 10, together with a supporting memorandum ("Def.'s Mem."), ECF No. 10-1, and answered the remaining counts the following day, ECF No. 13.

The parties twice requested additional time for Duprey's response to allow them to discuss settlement, which I granted, ECF Nos. 19 & 20. Then, on January 23, 2014, the parties notified the Court that a settlement had been reached in principle, ECF No. 21, and filed this Joint Motion to Approve Settlement about three weeks later, ECF No. 23, together with a joint memorandum in support of the motion ("Joint Mem."), ECF No. 23-1. The motion is ripe for resolution and a hearing is unnecessary because the issues adequately are presented in the filings. *See* Loc. R. 105.6 (D. Md. Jul. 2011).

The Settlement Agreement provides that Duprey releases Scotts for all claims related to his employment, except workers' compensation, Settlement Agreement § 4, Joint Mem. Ex. A, ECF No. 23-2, and that Duprey agrees he is not a prevailing party for purposes of attorneys' fees or costs under 29 U.S.C. § 216(b), *id.* § 3. The $7,500 global settlement splits into (1) $2,250 to Duprey for back pay, (2) $2,250 to Duprey for liquidated damages, and (3) $3,000 to Duprey's lawyers in attorneys' fees. Settlement Agreement § 2. The attorneys' fee was calculated by

taking forty percent of the global settlement pursuant to a contingent-fee arraignment. *See* Joint Mem. 5.

On May 12, 2014, I held a conference call on the record to resolve questions about the details of the settlement and the parties' positions with regard to the legal disputes. The parties stipulated that the amount sought in the Complaint was shown through informal discovery to be incorrect. Instead, if Duprey prevailed at trial, his recovery would be no more than $7,200. Further, Duprey's counsel acknowledged the strength of Scotts's legal argument that a significant portion of his client's time would be calculated using the fluctuating workweek method, and that if Scotts prevailed on that argument, the recovery would be limited only to partial back pay for about one workweek. This argument, according to Duprey, was the primary motivator for the ultimate settlement amount.

## II.   DISCUSSION

### A.  FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No.

DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[2]

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an

---

[2] It should be noted that the precedent in this Circuit is unclear as to whether court approval is *required* in cases subject to dismissal under Fed. R. Civ. P. 41(a)(1)(A). The Fourth Circuit has not provided guidance on this question, but the Eleventh has held that all FLSA settlements require court approval. *Lynn's Food Stores*, 679 F.2d at 1354. Although judges in this Court have cited the broad language from *Lynn's Food Stores*, none have held directly that the parties cannot use Rule 41(a)(1)(A) to effect settlement of an FLSA case. *See, e.g.*, *Gionfriddo v. Jason Zink, LLC*, No. RDB-09-1733, 2012 WL 1077765 (D. Md. Mar. 29, 2012); *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641 (D. Md. Mar. 23, 2010); *Saman*, 2013 WL 2949047. At least one judge in the Eastern District of Virginia appears to have taken the opposite position. *See Minsterman v. S.L. Nusbaum Realty Co.*, No. 10-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) ("[S]ince Rule 41(a)(1)(A)(ii) makes dismissal under such rule '[s]ubject to . . . any applicable federal statute,' and since the FLSA requires court approval of such dismissals, the parties may not effectuate such dismissal through use of a stipulation of dismissal." (quoting Fed. R. Civ. P. 41)). Because the parties have requested court approval in this case, I do not need to resolve this question today.

adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### B. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. Although the parties did not meaningfully address this factor in their motion, it is clear from the pleadings that several FLSA issues are in *bona fide* dispute. As a preliminary matter, Scotts rejects Duprey's claim that it was his "employer" for the purposes of 29 U.S.C. § 203(s)(1). *See* Ans. ¶¶ 3–5. Also the parties disagree about Duprey's rate of pay and hours worked. *Compare* Compl. ¶¶ 9–11, *with* Ans. ¶¶ 9–11. This means even if liability was established at trial, the amount of Scotts's exposure is questionable. Further, Scotts asserts ten affirmative defenses. Ans. 5–7.

Although Scotts's Motion to Dismiss concerns only the MWPCL claim, its contents highlight a dispute particularly relevant to the FLSA claim: Duprey claims not that he was not paid for overtime, but that he was not paid *properly* for his overtime. *See* Compl. ¶¶ 9, 10, 12. Scotts argues that Duprey worked fluctuating workweeks,[3] and that he therefore was paid properly for his overtime. *See* Def.'s Mem. 2 n.3 (citing 29 C.F.R. § 778.114; *Lance v. The Scotts Co.*, No. 04-5270, 2005 WL 1785315 (N.D. Ill. July 21, 2005)); *see also* Joint Mem. 7–8 (discussing the complexity of the case given the fluctuating workweek method). As noted above, Duprey's counsel admitted the strength of this argument during the May 12, 2014 conference

---

[3] Fluctuating workweek means, (1) Duprey's hours of work fluctuate from week to week, (2) he understood clearly that his salary covers whatever hours the job demanded in a particular workweek, and (3) his salary was sufficiently large to assure his hourly rate did not fall below the minimum hourly wage rate, including a fifty percent overtime premium, for the weeks where his hours are greatest. 29 C.F.R. § 778.114.

call.  Additionally, the limited informal discovery exchanged cut the potential damages by about forty percent.  Accordingly, I find that *bona fide* disputes exist as to Scotts's potential exposure in light of, *inter alia*, 29 C.F.R. § 778.114's provision on fluctuating workweeks.

### C. Fairness & Reasonableness

In finding this settlement fair and reasonable, I should evaluate several factors, including: "'(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'"  *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

First, although formal discovery has not commenced, the parties represent that they have engaged in informal discovery, including the exchange of "certain information related to Plaintiff's alleged damages calculations and his leave schedule."  Joint Mem. 3.  By avoiding formal discovery, resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced.  The total proposed settlement, exclusive of attorneys' fees, would compensate Duprey for approximately sixty percent of the back pay sought in the Complaint.  Settlement Agreement § 2; Joint Mem. 4.

The second, fourth, fifth, and sixth factors can be analyzed together.  Although the case may be resolved early, the settlement will release only Duprey's claims and will not affect other employees.  *See generally* Manual for Complex Litigation (Fourth) § 32.461 (2004) ("the judge should ensure that members of the proposed class are not prejudiced").  Next, the complexity of

the case is shown through the need to calculate Duprey's overtime based on the "coefficient table method" set forth in § 778.114.  *See generally* Corie J. Tarara, *The FLSA: The Law That Almost Every Employer Is Violating*, 60 Fed. Law. 15, 17 (March 2013).  Section 778.114 sets forth a complicated mathematical formula for calculating overtime pay due under the FLSA.  *See id.* at 17.

Using the hourly rate of $14–23 alleged in Duprey's Complaint, Compl. ¶ 9, he made approximately $28,000–46,000 per year (assuming two weeks for vacation).  In three years of working fifty forty-hour weeks each year, Duprey would have worked 6,000 hours.  If Duprey believes he worked 440.78 hours of overtime in those three years, *see id.* ¶ 14, that means he worked approximately 6,440.78 hours total.  The calculation from § 778.114 would put Duprey's overtime compensation around $2,874.30—far less than the $7,200 he now claims is due.  Duprey will receive seventy-eight percent of this amount just in back pay, not including liquidated damages and attorneys' fees.  Settlement Agreement § 2(a)–(c).  His counsel represents that it has handled more than one-hundred and fifty FLSA cases in Virginia, West Virginia, Maryland, and the District of Columbia.  Joint Mem. 6.  Being "keenly aware" of the intricacies of FLSA cases, counsel believes this case posed "unique difficulties" and that "[i]n consideration of such risk and uncertainty, Duprey believes that he obtained a favorable result.  Moreover, Duprey is highly satisfied with the settlement and the quick [resolution] of this matter."  *Id.* at 6–7.  After consideration of the factual contentions and risks, counsel believes "the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Plaintiff."  *Id.* at 4–5.

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint, except for workers' compensation.  *See* Settlement Agreement § 4.  A general

release like this can render the agreement unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Fanklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012).  But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)).  As explained above, Duprey was compensated for almost eighty percent of his back pay when calculated using the fluctuating workweek method, plus an additional $2,250 in liquidated damages.  This percentage fairly compensates Duprey for the general release executed.

The Supreme Court held that "to allow waiver of statutory wages by agreement would nullify the purposes of the [FLSA]." *Brooklyn Sav. Bank*, 324 U.S. at 707.  The Eleventh Circuit extended *Brooklyn Savings* to hold that FLSA claims can be resolved only (1) if the settlement is supervised by the Secretary of Labor, *Lynn's Food Stores*, 679 F.2d at 1353, (2) if a stipulated judgment is entered for the plaintiff pursuant to a settlement agreement, *id.* (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947)), or (3) if the defendant provides the full amount sought in the complaint, which moots the plaintiff's claims and deprives the court of subject matter jurisdiction, *see Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012).

But contrary to the Eleventh Circuit's holdings, "[u]nlike the instant case, none of the three cases considered in *Brooklyn Savings* involved a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA. Instead, the [Supreme] Court specifically left open the question of the validity of such a settlement." *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002). Duprey is permitted to agree that—in light of the *bona fide* disputes as to liability and the costs and risks of proceeding on the merits—accepting a lesser amount than he ultimately could receive at trial is reasonable. This agreement is better viewed as a stipulation to an amount that fairly compensates Duprey for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*. Where a settlement is reasonable and is reached through negotiations between counsel in an adversarial setting, "the concerns that the Eleventh Circuit expressed in *Lynn's Food Stores* are not implicated." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 795 (U.S. 2012). Absent clear binding authority to the contrary, I decline to depart from the longstanding "public policy favoring voluntary resolution of disputes." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994); *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910) (discussing the presumption that disputes can be resolved by settlement). Here, the amount provided in consideration for the general release is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.

Finally, there is no suggestion of fraud or collusion and Duprey's counsel represented him from the outset of the case. Joint Mem. 7–8; *see Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").

### D. Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. The attorneys' fees in this case are difficult to assess because Duprey agreed to a contingent-fee arrangement providing counsel forty percent of the global settlement. *See* Joint Mem. 5.[4]

*1. Contingent-Fee Arrangements and the FLSA*

First, although contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases,[5] *see, e.g.*, *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437 (D. Md. 1998) (citing authority from multiple circuits), a district court may abuse its discretion by granting attorneys' fees pursuant to a contingent-fee arrangement in an FLSA case, *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *Llora v. H. K. Research Corp.*, No. 96-1552, 1997 WL 693062, at *1 (4th Cir. Oct. 29, 1997) (summarily vacating the district court's award of a contingent-fee percentage to the prevailing party). *Lyle* and *Llora* reason that once judgment is entered, the prevailing party is entitled to attorneys' fees *in addition to* damages under 29 U.S.C. § 216(b). Therefore, because a contingent-fee distributes a portion of the damages award to the attorney, it is an impermissible infringement on the statutory award to the employee.

While the wisdom of entering into a contingent-fee arraignment in an FLSA case may be questioned in light of Fourth Circuit precedent and the potential for conflicts of interest, I do not

---

[4] Plaintiff's counsel is commended for disclosing this arraignment, as is required by Maryland Rule of Professional Conduct 3.3.
[5] Common-fund cases are where "'a litigant or a lawyer . . . recovers a common fund for the benefit of persons other than himself or his client [and] is entitled to a reasonable attorney's fee from the fund as a whole.'" *US Airways, Inc. v. McCutchen*, ---- U.S. ----, 133 S. Ct. 1537, 1545 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

read *Lyle* and *Llora* as prohibiting me from independently evaluating the amounts distributed to the client and to the attorneys using a lodestar calculation, assuming they had been negotiated with the separation required by the Maryland Rules of Professional Conduct. *See Walker v. Dovetails, Inc.*, No. 10-526-HEH, 2010 WL 5878336, at *3 (E.D. Va. Nov. 30, 2010) *report and recommendation adopted*, 2011 WL 744632 (E.D. Va. Feb. 24, 2011). Duprey accepted $2,250 in back pay and $2,250 in liquidated damages. Settlement Agreement § 2. There is no evidence to suggest that he was offered $7,500 in damages. *Lyle* and *Llora* do not preclude Duprey, after receiving a damages offer of $4,500, which constitutes a significant portion of the damages that could have been recovered were he to succeed at trial, from seeking an additional $3,000 to cover attorneys' fees. This is different from an agreement that seeks to pay an employee a certain amount in damages that she must split with her lawyer, which clearly would violate the principle announced in *Lyle* and *Llora*.

### 2. Lodestar

Traditionally, "[i]n calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules (D. Md.

Jul. 2011),[6] this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g.*, *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000).

The attorneys' fees requested in the Settlement Agreement total $3,000. Settlement Agreement § 2(c). On May 15, 2014, Duprey's counsel submitted additional documentation in support of its fee award. Fee Supp., ECF No. 26. Three attorneys billed 31.5 hours on this case and law clerks/paralegals billed 2.9 hours. *Id.* at 1–2. All of the billing rates are within the presumptively reasonable rates set forth in Appendix B. The attorneys collectively billed 24.3 hours on case development, 3.15 hours on pleadings, 4.75 hours on motions practice, and 2.2 hours preparing their fee petition. *Id.* Curiously, although the case is to be settled, counsel does not include any billed time for ADR. *Id.* at 2. I assume this time was included—perhaps by mistake—in case development, which includes "routine communications with client, co-counsel, opposing counsel, and the Court." *Id.* at 1. Mr. Zipin, the most experienced attorney on the case, was most heavily involved in the case development stages, with Mr. Friedman taking the lead on motions practice, pleadings, and the fee petition. When assuming that case development includes settlement negotiations, I find that the billed hours and rates are reasonable.

Counsel appears to be accepting a discounted rate in light of the risks of proceeding to discovery and trial, even though the reasonable fees if Duprey prevailed could be as high as $7,655.00. Instead of asking for $7,655, counsel seeks approval of attorneys' fees in the amount of $3,000. *See* Settlement Agreement § 2(c). In light of the facts of this case and the disputes explained above, I find this compromise award is reasonable. *Cf. Hayden v. Bowen*, 404 F.2d 682, 686 (5th Cir. 1968) (affirming the district court's approval of attorneys' fees where the

---

[6] *Available at* https://www.mdd.uscourts.gov/localrules/LocalRules-Oct2012Supplement.pdf.

amount, although set by a contingent-fee arraignment, was reasonable). Accordingly, the attorneys' fee award of $3,000 will be APPROVED.

### III. CONCLUSION

For the reasons explained above, the Joint Motion to Approve Settlement will be GRANTED by separate order.

Dated: May 23, 2014 　　　　　　　　　　　　　　　　　　　　　　/S/　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

jwr